UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LOWREN DOW,

        Plaintiff,

v.                                                  Case Number 09-13697-BC

RHEEM MANUFACTURING COMPANY,
ROBERTSHAW CONTROLS COMPANY,
INVENSYS CONTROL SYSTEMS,

        Defendants,
_____/

MICHIGAN FARM BUREAU GENERAL
INSURANCE,

        Plaintiff,                        Case Number 10-10753-BC
v.                                                  Honorable Thomas L. Ludington

RHEEM MANUFACTURING COMPANY,
ROBERTSHAW CONTROLS COMPANY,
INVENSYS CONTROL SYSTEMS,

        Defendants.
_____/

**OPINION AND ORDER DENYING
PLAINTIFFS' MOTIONS FOR RECONSIDERATION**

In this products liability suit, the Court excluded the testimony of the plaintiffs' expert witness addressing causation. Because the plaintiffs have no evidence of causation, the Court further concluded, the defendants are entitled to judgment. The plaintiffs now move for reconsideration of those two decisions. The expert acknowledges that any testing of his theory of causation "would be meaningless" because of the presence of too many uncontrolled variables. He also acknowledges that he found no physical evidence supporting his theory of

causation. Consequently, the Court again concludes that the testimony should be excluded and the defendants are entitled to judgment.

Plaintiff Lowren Dow was seriously injured when a water heater exploded. He alleges that the water heater's pilot safety control valve, designed to cut off the flow of propane gas when the pilot goes out, was defectively designed or manufactured. The control valve contains a spring-loaded magnet. If the control valve operates properly, when the pilot is extinguished, the magnet presses a rubber seal, or gasket, against a metal seat that surrounds a gas inlet. When the gasket presses against the seat, the inlet is sealed and the flow of gas is cut off.

The parties agree that something caused the gasket to dislodge — they disagree about what that cause was. The plaintiffs allege that a design or manufacturing defect caused the gasket to stick to the metal seat, causing it to dislodge from the safety magnet. The defendants contend that the misuse of the gas regulator led to over-pressurization, which caused the gasket to dislodge.

Whatever the cause, the parties agree that when Dow attempted to light the pilot, an explosion left him with burns over 98 percent of his body. The house sustained more than one hundred thousand dollars in damages as well. Dow filed suit against the water heater manufacturer, Defendant Rheem Manufacturing Company, and the control valve manufacturers, Defendants Robertshaw Controls Company and Invensys Control Systems (in case number 09-13697). Five months later, Plaintiff Michigan Farm Bureau General Insurance filed a subrogation action alleging similar claims against the same Defendants (in case number 10-10753). The cases were consolidated in July 2010.

The parties then engaged in a vigorous motions practice. In less than three months, twenty-eight motions were filed in case number 09–13697 and thirteen motions were filed in case number 10–10753. Among these motions, Defendants moved to exclude the testimony of Plaintiffs' experts, Alan Kasner, William Woehrle, and Timothy Dunn, and to strike their expert reports. Defendants also moved for summary judgment. On September 26, 2011, the Court granted Defendants' motions to exclude the experts' testimony and granted Defendants' motions for summary judgment. *Dow v. Rheem Mfg.*, 86 Fed. R. Evid. Serv. 881, 2011 WL 4484001(E.D. Mich. Sept. 26, 2011).

Plaintiffs now move for reconsideration of the decision to grant the motion to exclude Kasner's testimony and grant Defendants' motions for summary judgment. ECF Nos. 220, 221.

Plaintiffs first assert that the Court erred in excluding Kasner's testimony. The Court incorrectly focused on Kasner's conclusion, Plaintiffs argue, rather than Kasner's methodology. Plaintiffs' argument is unpersuasive. As the Court explained in its previous opinion and order, Kasner's testimony was excluded not because of the conclusion, but because the testimony was not the product of reliable principles and methods. Kasner hypothesized that the gasket was dislodged because it stuck to the metal seat. He found no physical evidence supporting his hypothesis. He did not test his hypothesis either, explaining that because of unknown variables any testing of his theory "would be meaningless." Kasner Dep. 40:15, Oct. 8, 2010, *attached as* Defs.' Mot. Summ. J. Ex. 4; *see also* Pls.' First Mot. for Reconsideration 15, ECF No. 220 (acknowledging that "any such tests would be essentially meaningless — there are too many uncontrolled variables"). Kasner thus offered an untested hypothesis (indeed, by his own account, an untestable hypothesis) with no physical evidence to support it. Kasner did not offer

an opinion based on the scientific method, but speculation. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). His testimony is inadmissible under Federal Rule of Evidence 702, and Plaintiffs' motion for reconsideration on this issue will be denied.

Plaintiffs next assert that the Court erred in granting Defendants summary judgment because "there is direct evidence that this safety valve was defective — the gasket undisputedly had come off. There was circumstantial evidence of a defect simply from the fact that this safety device failed to operate in the manner intended — the gas leaked." Pls.' Second Mot. for Reconsideration 11, ECF No. 221. This argument is likewise unpersuasive. As the Court explained in its previous opinion and order, "the Supreme Court of Michigan has repeatedly noted that manufacturers and sellers are not insurers, and they are not absolutely liable for any and all injuries sustained from the use of their products." *Dow v. Rheem Mfg.*, 86 Fed. R. Evid. Serv. 881, 2011 WL 4484001, at *16 (E.D. Mich. Sept. 26, 2011) (internal alterations omitted) (quoting *TIG Ins. Co. v. Carrier Corp.*, No. 216793, 2000 Mich. App. LEXIS 2179, at *6 (Mich. Ct. App. 2000)). Rather, "Plaintiffs must prove 'a causal connection' between their alleged defect theory and the resultant explosion." *Dow*, 2011 WL 4484001, at *15 (quoting *Wendorf v. JLG Indus.*, 683 F. Supp. 2d 537, 548 (E.D. Mich. 2010)). Here, Plaintiffs offered no evidence establishing a causal connection. Plaintiffs have not identified any physical evidence, testing, or expert literature that demonstrates that the Robertshaw gas control valve malfunctioned in the manner Kasner suggests. Rather, they rely solely on Kasner's hypothesis that the gasket could adhere to the seat under unspecified conditions. Kasner's testimony, however, has been excluded for the reasons discussed above. Defendants are entitled to judgment. Plaintiffs' motion for reconsideration of the grant of summary judgment will be denied.

**I**

Dow rented the single-family residence at 2020 Cat Lake Road in Mayville, Michigan, from his grandfather, William Harmon. Dow's girlfriend, Stephanie Brooks, lived at the residence as well. The homeowner's insurance policy, issued by Michigan Farm Bureau General Insurance, identified Harmon as the insured.

**A**

The water heater was located in the basement of the residence. Harmon purchased the water heater on April 7, 2006, at Self Serve Lumber in Caro, Michigan. The water heater was a 40 gallon 34,000 BTU Richmond Integra propane fired water heater bearing Model No: 6G40-34PF and Serial No: RMLP10055-11946. Its date code specified that it was manufactured in Mexico sometime in October 2005. The water heater was designed, manufactured, sold, and supplied by Rheem and was originally equipped with a Robertshaw control valve Model No: 220RLPTSPC, bearing a manufacturing date code of 05-40 made sometime between October 9 and October 14, 2005, in Mexico.

On August 7, 2006, Rheem supplied Harmon with a replacement water heater control valve to replace the original control valve which was allegedly not working. The replacement control valve was a Robertshaw Model No: 220RLPTSP-C, made in Mexico, and bearing a manufacturing date code specifying that it was manufactured sometime between July 9th and July 15, 2006.

Dow arrived home after work on July 16, 2007, and noticed that the hot water in the shower was not working. He went to the basement to light the water heater's pilot. On

attempting to light it, there was an explosion causing significant personal injury to Dow and damage to the residence.

When the explosion occurred on July 16, 2007, the sight glass covering the pilot light had been broken out. Defendants contend that the sight glass was broken in order for someone to use a butane lighter rather than the piezoelectric igniter attached to the gas control valve. The water heater had previously been connected to a large propane tank, but had been connected to a smaller tank in the yard as of the day of the explosion. The electric igniter provided for igniting the pilot light was also not attached, but there was no physical evidence demonstrating that it became detached as a result of the explosion. Plaintiffs have not clarified certain facts of the case, which include who installed the water heater, who resided at the house, who called Rheem's customer service to inquire as to a replacement valve, how the water heater pilot light was re-lit, or which propane tank the water heater was connected to prior to the explosion.

**B**

The Robertshaw control valve at issue incorporates a spring-loaded "safety magnet" located in the inlet chamber that is designed to stop the flow of gas in the event of a pilot outage. When the pilot is extinguished, the charge to an electromagnet is interrupted and the safety magnet closes. In the closed position, a nitrile rubber seal, or gasket, on the end of the safety magnet presses against an inlet opening, stopping the flow of gas through the opening.

The gasket is attached to the safety magnet with a metal retainer button. Both sides of the gasket are coated with a powdered lubricant, molybdenum disulfide. The rubber gasket stretches over the retainer button and fits into a groove beneath it. In order for the gasket to dislodge

during use, it would be necessary to apply a force to it that is greater than the retaining force created by the button.

The parties agree that the gasket in this case dislodged from the safety magnet, preventing the magnet from properly closing when the pilot went out. The contested issue is what caused the gasket to dislodge from the safety magnet. Plaintiffs contend that a design or manufacturing defect caused the gasket to dislodge, causing it to stick to the metal seat. Defendants contend that the misuse of the gas regulator resulted in over-pressurization, causing the gasket to dislodge.

## II

Eastern District of Michigan Local Rule 7.1(h) permits any party to move for reconsideration of the Court's conclusions within fourteen days of the entry of the order. E.D. Mich. L.R. 7.1(h)(1). A motion for reconsideration must identify a palpable defect in the decision, not simply reiterate an argument that the Court has previously rejected:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case.

*Id*. "A palpable defect is a defect that is obvious, clear, unmistakable, manifest or plain." *Scozzari v. City of Clare*, 723 F. Supp. 2d 974, 981–82 (E.D. Mich. 2010) (citation and quotation marks omitted). Not addressing an issue constitutes a waiver or abandonment of the argument. *Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998).

Federal Rule of Civil Procedure 59(e) confers discretion on the court to alter or amend a judgment under limited circumstances, including because of an intervening change in the

controlling law, not previously available evidence, or the necessity to correct a clear error of law or prevent manifest injustice. *Nagle Indus., Inc. v. Ford Motor Co.*, 175 F.R.D. 251, 254 (E.D. Mich.1997) (citation omitted). Like motions brought pursuant to Local Rule 7.1(h), motions brought pursuant to Rule 59(e) "are not intended as a vehicle to relitigate previously considered issues . . . and are not the proper vehicle to attempt to obtain a reversal of a judgment by offering the same arguments previously presented." *Id.* (citation and internal quotations omitted).

Under Federal Rule of Civil Procedure 60(b), a motion for relief from judgment can be granted for several reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

*Id*. To be corrected under Rule 60(b)(1), a mistake of law by the court must involve a fundamental misconception of law or a conflict with a clear statutory mandate. *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000). Although courts have some discretion in granting relief from judgment pursuant to Rule 60(b), that power is limited by the public policy favoring finality of judgments. *See Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001). This is "especially true in an application of subsection (6) of Rule 60(b), which applies only in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Id.*

In this case, Plaintiffs' motions cite Local Rule 7.1(h) and Federal Rules of Civil Procedure 59(e) and 60. Consistent with their vigorous motions practice, Plaintiffs move for reconsideration in two separate motions. The first requests reconsideration of the decision to exclude Kasner's testimony. The second requests reconsideration of the decision granting Defendants summary judgment.

### III

### A

Plaintiffs first move for reconsideration of the decision to exclude Kasner's testimony. The Court erred, Plaintiffs assert, in focusing on his conclusions rather than his methodology. Plaintiffs explain that Kasner's methodology involved two discrete observations. First, he "performed a test on an exemplar safety valve" and "was able to detach the gasket from the valve with as little force as 1.8 ounces." Pls.' First Mot. for Reconsideration 9 ("Pls.' First Mot."). Second, he looked at the gasket at issue and noted that the lubricant was worn away on one side. Specifically, Kasner "could visually observe" that "on the front side there were distinct areas where the lubricant was worn away . . . . Those markings did not appear on the back side of the gasket, which sat inside the flange, where the gray coating appeared more uniform." *Id*. at 10–11.

Based on his observations, and his knowledge that that rubber can stick to metal surfaces, "Kasner offered his conclusion that the most plausible explanation for how this gasket came to be dislodge[d] is that the last time the safety valve was in a closed position, and was then pressed to open, the uncoated parts of the nitrile gasket stuck to the metal seat so that as the valve descended the adhesion force exceeded 1.8 ounces and peeled the gasket off." *Id*. at 13.

Plaintiffs acknowledge, however, that Kasner "has not shown by any testing of these valves that this adhesion of the gasket to the seat can exceed the slight force required to dislodge the gasket." *Id*. at 14. Plaintiffs write: "Dr. Kasner explained why any such tests would be essentially meaningless — there are too many uncontrolled variables to try to duplicate precisely the conditions that existed inside this particular unit at this particular moment in time when something caused the gasket to come off." *Id*. at 15.

Plaintiffs also acknowledge that Kasner found no physical evidence supporting his hypothesis. In his deposition, for example, Kasner was asked:

> Q: Is there any physical evidence present on the seat or on the rubber seal that shows that adhesion did occur in this case, and pulled the rubber seal off? Any physical evidence that shows that —
> A: I don't think you can see any physical evidence of that —
> Q: Okay.
> A: — short of doing, you know, the actual testing.
> Q: All right. And, again, you have not done the first test that shows this rubber seal adhering [to] the seat in the valve and [being] pulled off. You have not done one test that shows that. Is that correct sir?
> A: Because I don't know the exact conditions. The leveling of contamination, the contact force, et cetera, et cetera.
> Q: I understand there are things you don't know, and because of that you have not tested your hypothesis with a test of a Robertshaw valve and a Robershaw seal to demonstrate adhesion; correct?
> A: The test would be meaningless, again, because you cannot duplicate the exact conditions.

Kasner Dep. 39:18–40:16, Oct. 8, 2010, *attached as* Defs.' Mot. Summ. J. Ex. 4.

The admissibility of expert testimony is governed by the Federal Rules of Evidence. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and

-10-

>  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The adjective 'scientific,' " the Supreme Court explains, "implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993).

Consequently, the trial court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. at 592–93. In *Daubert*, the Court provided several factors for trial judges to consider in making this assessment:

> These include whether the theory or technique in question "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has a "known or potential rate of error," and whether the theory or technique enjoys "general acceptance" in the "relevant scientific community."

*Newell Rubbermaid, Inc. v. Raymond Corp.*, --- F.3d ----, 2012 WL 1080745, at *4 (6th Cir. 2012) (internal citation omitted) (quoting *Daubert*, 509 U.S. at 593–94). The Sixth Circuit notes:

> Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity. In addition, if a purported expert's opinion was prepared solely for litigation, that may also be considered as a basis for exclusion.

*Newell Rubbermaid*, 2012 WL 1080745, at *4 (internal citation omitted) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009); *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)).

The key inquiry is whether the reasoning is the product of the scientific method — if the opinion does not reliably apply the principles and methods of scientific explanation to the facts of the case, it will not typically be helpful to the jury:

> Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested. Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified; indeed, this methodology is what distinguishes science from other fields of human inquiry.

*Daubert*, 509 U.S. at 593 (internal quotation marks omitted) (quoting Michael Green, *Expert Witnesses and Sufficiency of Evidence in Toxic Substances Litigation: The Legacy of Agent Orange and Bendectin Litigation*, 86 Nw. U. L. Rev. 643, 645 (1992)).

Here, as noted, Plaintiffs expressly acknowledge that Kasner has no physical evidence supporting his theory and, moreover, that any testing of Kasner's theory "would be essentially meaningless." Pls.' First Mot. 15. Thus, Plaintiffs implicitly acknowledge Kasner did not offer an opinion based on the scientific method, but speculation.

To elaborate, Kasner offered his opinion based on two observations. First, he observed that a gasket could be dislodged with 1.8 ounces of force. Second, he observed that the lubricant on the gasket at issue in this case was worn away on one side. Noting that this would make the gasket more likely to stick, Kasner speculated that it was possible that sufficient adhesion forces acted on the gasket to dislodge it from the safety magnet. He did not attempt to test this hypothesis on a model. He did not attempt to determine if there were any set of conditions in an exemplar that could generate sufficient adhesion force to cause a gasket to stick. He did not find any physical evidence showing that the gasket had actually stuck. And he concedes any testing

of his theory "would be essentially meaningless" because of too many uncontrolled variables. *Id*. Thus, the Court concludes that his testimony must be excluded.

First, Kasner's theory is not based on sufficient facts or data: he cannot intelligently opine on whether even the stickiest of conditions inside the valve would create sufficient adhesion force to validate his theory. And he has no physical evidence suggesting that his hypothesis is correct. Thus, as a matter of both theory and fact, his testimony is "essentially meaningless."

Second, Kasner's theory is not the product of the scientific method. As the Supreme Court observes, "Scientific methodology today is based on generating hypotheses and testing them to see if they can be falsified." *Daubert*, 509 U.S. at 593; *see id*. ("[T]he criterion of the scientific status of a theory is its falsifiability, or refutability, or testability." (quoting Karl Popper, *Conjectures and Refutations: The Growth of Scientific Knowledge* 37 (5th ed. 1989)). Kasner develops a hypothesis, but does not attempt to test its validity. Rather, he concedes that any testing of his theory would be essentially meaningless.

Third, Kasner's theory relies on improper extrapolation. He begins with two observations. From these, he extrapolates to a conclusion. Specifically, because of his observation that he was "able to detach the gasket from the valve with as little force as 1.8 ounces," which isn't very much, Kasner concludes "the most plausible explanation for how this gasket came to be dislodge[d] is that . . . the uncoated parts of the nitrile gasket stuck to the metal seat so that as the valve descended the adhesion force exceeded 1.8 ounces and peeled the gasket off." Pls.' First Mot. 9, 13. Kasner employs no scientific methodology to go from observation to conclusion. In fact, he concedes that he is unable to — because of too many uncontrolled

variables, he did not even attempt to test his theory. *See id*. at 15 (conceding that "any such tests would be essentially meaningless — there are too many uncontrolled variables").

Finally, Kasner's opinion was prepared solely for litigation, another red flag recently identified by the Sixth Circuit. *Newell Rubbermaid*, 2012 WL 1080745, at *4.

In sum, Kasner's testimony does not reliably apply the principles and methods of scientific explanation to the facts of the case, it would not be helpful to the jury. Plaintiffs' motion for reconsideration of the order excluding Kasner's testimony will be denied.

**B**

Next, Plaintiffs move for reconsideration of the Court's grant of summary judgment to Defendants. Plaintiffs write: "The Court incorrectly believed that the claimed defect pled by Plaintiff was adhesion which allowed a rubber gasket to stick, thereby, causing a leak to occur resulting in the explosion when it was not. A review of the pleadings reveals that Plaintiff's claim of defect was the inability to seal." Pls.' Second Mot. for Reconsideration 1, ECF No. 221. Making a strict liability argument, Plaintiffs write that the product defect that they identified is that the gasket could become dislodged under any set of circumstances:

> Defendants are liable for injuries caused by this defect even if this gasket to come off the valve [sic] for Plaintiff is unable to precisely discover what was the underlying condition which manifested the defect. . . .
>
> [T]here is direct evidence that this safety valve was defective — the gasket undisputedly had come off. There was circumstantial evidence of a defect simply from the fact that this safety device failed to operate in the manner intended — the gas leaked. . . .
>
> The testimony of Plaintiff's polymer expert, Dr. Alan Kasner, stricken by this Honorable Court, would have provided *additional* evidence that this product was unsafe by demonstrating how little force was required to detach this gasket from the safety valve and by Defendants' failure to take sufficient precautions against the gasket sticking to the metal seat and being stripped off when the valve was

-14-

> depressed, but even absent that testimony the fact that the gasket . . . came off is itself circumstantial evidence that it was not reasonably safe.
>
> Defendants' design and manufacture of the unit was unsafe, as Plaintiff's other experts have indicated, simply because, regardless of the precise underlying precipitating event, the design and manufacture of this product allowed it to fail, when it should not fail.

*Id.* at 7, 11, 13 (paragraph break supplied). Plaintiffs' arguments are unpersuasive.

As the Court noted in its previous opinion and order, Michigan does not impose strict liability on product manufacturers. The Michigan Supreme Court "has repeatedly noted that manufacturers and sellers are not insurers, and they are not absolutely liable for any and all injuries sustained from the use of their products." *Dow v. Rheem Mfg.*, 86 Fed. R. Evid. Serv. 881, 2011 WL 4484001, at *16 (E.D. Mich. Sept. 26, 2011) (quoting *TIG Ins. Co. v. Carrier Corp.*, No. 216793, 2000 Mich. App. LEXIS 2179, at *6 (Mich. Ct. App. 2000)).

Instead, "to prevail on their product liability negligence, express warranty, and implied warranty claims, Plaintiffs must prove 'a causal connection' between their alleged defect theory and the resultant explosion." *Dow*, 2011 WL 4484001, at *15 (quoting *Wendorf v. JLG Indus.*, 683 F. Supp. 2d 537, 548 (E.D. Mich. 2010)). As Defendants correctly observe, "the Michigan Supreme Court has made clear that the Michigan Product Liability Statute applies to 'any and every products liability action . . . regardless of whether it is labeled a possible unified action, a possible negligence action, or a possible implied warranty action.' " Defs.' Resp. to Pls.' Second Mot. 1 (quoting *In re Certified Questions from United States Court of Appeals for the Sixth Circuit*, 331 N.W.2d 456, 462 (Mich. 1982))."

For these types of cases, the Michigan Supreme Court instructs that "the plaintiff's evidence is sufficient if it establishes a logical sequence of cause and effect, notwithstanding the

-15-

existence of other plausible theories, although other plausible theories may also have evidentiary support." *Skinner v. Square D Co.*, 516 N.W.2d 475, 478 (Mich. 1994) (internal quotation marks omitted) (quoting *Mulholland v. DEC Int'l*, 443 N.W.2d 340, 349 (Mich. 1989)).

The court cautions, however, that if a party's theory of causation is challenged, the party must come forward with evidence supporting its theory to avoid the entry of summary judgment:

> Once a party is challenged as to the existence of the facts upon which he purports to build his case, the sum and substance of the summary judgment proceeding is that general allegations and notice pleading are not enough. . . . That party must come forward with at least some evidentiary proof, some statement of specific fact upon which to base his case. If he fails, the motion for summary judgment is properly granted.

*Id.* at 478–79 (emphasis omitted) (quoting *Durant v. Stahlin*, 135 N.W.2d 392 (Mich. 1965)).

In this case, as noted, Plaintiffs have not produced evidence supporting their theory of causation. Plaintiffs have not identified, for example, any physical evidence, testing, or expert literature that demonstrates why they think that the gasket could have adhered to the seat, much less that it did so. Rather, to establish causation Plaintiffs rely on Dr. Kasner's opinion. As noted, however, Dr. Kasner's testimony has been excluded. Even it had not been, "Dr. Kasner has not, and cannot, identify any documented instance of a rubber gasket sticking to an inlet seat in any gas control valve, let alone such an occurrence with a Robertshaw control valve." *Dow*, 2011 WL 4484001, at *7.

Because Plaintiffs have not produce evidence supporting their theory of causation, Plaintiffs' motion for reconsideration of the opinion and order granting Defendants' motions for summary judgment will be denied.

**V**

Accordingly, it is **ORDERED** that Plaintiff's motion for reconsideration of the Court's opinion and order granting Robertshaw's motion to exclude the testimony of Alan Kasner (ECF No. 220) is **DENIED**.

It is further **ORDERED** that Plaintiff's motion for reconsideration of the Court's opinion and order granting Defendants' motion for summary judgment (ECF No. 221) is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: May 9, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 9, 2012.

Tracy A. Jacobs
TRACY A. JACOBS